UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES COX,

   Petitioner,       Case No. 19-cv- 12542
               Hon. Matthew F. Leitman

v.

MARK MCCULLICK,

   Respondent.
_____/

**ORDER (1) GRANTING PETITIONER'S MOTION FOR AN EXTENSION
OF TIME (ECF No. 25), (2) DENYING PETITION AND AMENDED
PETITION FOR WRIT OF HABEAS CORPUS (ECF Nos. 1, 21),
(3) DENING A CERTIFICATE OF APPEALABILITY, AND
(4) DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Charles Cox is a state inmate in the custody of the Michigan Department of Corrections.  In 2016, a jury in the Wayne County Circuit Court convicted Cox of first-degree murder, carjacking, armed robbery, felon in possession of a firearm, and felony-firearm. The state trial court then sentenced Cox to life imprisonment for the murder conviction and lesser terms for the other offenses.

In August 2019, Cox filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  Cox later filed an Amended Petition after the case was stayed so that Cox could pursue additional claims in the state courts. (*See* Am. Pet., ECF No. 21.)

The Court has carefully reviewed all of Cox's claims. For the reasons explained below, the Court will deny the claims raised in the Amended Petition because they are time-barred and will deny relief with respect to the one claim raised in the initial Petition because it is without merit.

# I

## A

The charges against Cox arose out of the robbery and shooting death of a man named Anthony Tolson in the parking lot of a Detroit party store on December 24, 2015. The Michigan Court of Appeals described the relevant facts as follows:

> This case arises from the shooting and death of the 33–year old victim on December 24, 2015, at approximately 9:30 p.m. The victim had just performed as a musician during a church's Christmas Eve service and was driving to his mother's home for the holiday, with gifts in his car for his children. Prior to arriving at his mother's home, the victim picked up his friend from the friend's jobsite. On their way, the victim and his friend stopped at the Freemont Market. The victim parked next to the store while his friend got out and went inside the Market. While the friend was inside the store, someone ran in and yelled, "they about to rob this bitch." Within a few seconds, the friend heard two gunshots, ran outside, and found the victim lying on the ground. The victim later died of injuries sustained from the gunshot wounds.
>
> Surveillance video near the store recorded two men wearing masks exit a gold Chevy Equinox, with the driver remaining in the vehicle. One of the men was wearing a gray-hooded sweatshirt with a design on its back, stone washed blue jeans, dark blue gloves, and Nike shoes. The

other man was wearing a darker hooded sweatshirt. After dropping off the men, the driver pulled away, and parked in another location as the two men approached the store. According to a witness, the two men ran up to the victim with their weapons, and one of them said, "shut the fuck up[,] give me everything that you got." Seconds later, the victim was shot three times. The men fled in the victim's Trail Blazer, which was later found incinerated in an alley on December 26, 2015.

When the police released the surveillance video to the public, defendant's live-in fiancée, Nika Rogers, contacted the police and identified the man in the gray sweatshirt as defendant. During defendant's trial, Rogers testified that defendant contacted her after the incident and confessed to shooting the victim, taking his vehicle, and stealing the items in the victim's vehicle, including a Batman toy the victim bought for his "youngest son," before setting the car on fire. She stated that defendant had explained that it was "a robbery [that] went wrong."

After the close of the prosecution's case-in-chief, there was an in-chambers discussion about defendant's plan to call Tasha Pritchett to testify and the prosecution's view that her testimony would be inadmissible. A brief record about the issue was made after the conference. Defense counsel advised the court that Pritchett would testify that defendant's fiancée told her that she and defendant had a "very volatile relationship, that there was hitting and my client could essentially go to jail." The prosecution noted that such testimony would only be admissible if it was inconsistent with the testimony provided by defendant's fiancée. The trial court agreed with the prosecutor, and disallowed the testimony.

*People v. Cox*, 2017 WL 6502776, at ** 1-2 (Mich. Ct. App., Dec. 19, 2017).

3

**B**

Following his convictions and sentence, Cox filed a Claim of Appeal in the Michigan Court of Appeals. His appellate counsel filed a brief that raised the following claims:

> I. The trial court reversibly erred in denying appellant his due process right to present a defense under U.S. Const. Ams. V, XIV, and Mich. Const. 1963, Art. I, secs. 17, 20, when the court precluded a defense witness from testifying.
>
> II. Convictions and sentences for two counts of murder resulting from the death of one individual are violative of double jeopardy protections. One of the convictions and sentences must be vacated and the judgment of sentence modified to reflect one conviction supported by the different theories of murder.

(Cox Br. on Appeal, ECF No. 13-19, PageID.1101.)

The first issue dealt with the state trial court's exclusion of the proposed testimony of Tasha Pritchett. (*See* Mich. Ct. Appeals Op., ECF No. 13-19, PageID.1059.)  The Michigan Court of Appeals rejected that claim on the merits. (*See id.*, PageID.1059-1062.)  The Court of Appeals did grant relief with respect to the double jeopardy claim, and it remanded the case to the trial court to correct Cox's Judgment of Sentence. (*See id.* PageID.1063. *See also People v. Cox*, 2017 WL 6502776 (Mich. Ct. App. Dec. 19, 2017).)

4

Cox thereafter filed an Application for Leave to Appeal in the Michigan Supreme Court. (*See* Application, ECF No. 13-20, PageID.1151-1160.) In that Application, Cox argued again that the state trial court erred when it excluded Pritchett's testimony. (*See id.*) On May 29, 2018, the Michigan Supreme Court denied the Application by form order. (*See* Mich. Sup. Ct. Order, ECF No. 13-20, PageID.1197. *See also People v. Cox*, 911 N.W.2d 706 (Mich. 2018).)

Cox then filed the Petition in this Court. (*See* Pet., ECF No. 1.) In the Petition, Cox raised the same two claims that he raised in the Michigan Court of Appeals. (*See id.*, PageID.5-10.) The Petition was signed, dated, and placed in the prison mail system on August 23, 2019. (*See id.* PageID.17.)

On November 20, 2019, Cox signed and dated a motion to stay these proceedings and hold the Petition in abeyance while he exhausted further claims in the state courts. (*See* Mot., ECF No. 8.) The motion outlined several claims that Cox asserted that he wanted to raise in this federal habeas case, but he said that he first wanted to present the claims to the state courts in a post-conviction review proceeding. (*See id.* PageID.36-38.) The Court granted the motion and held the case in abeyance. (*See* Order, ECF No. 15.)

Cox filed a Motion for Relief from Judgment in the state trial court on October 21, 2020. (*See* St. Ct. Mot., ECF No. 20-3.) The trial court denied that motion in an order dated April 4, 2021. (*See* St. Ct. Order, ECF No. 20-4.) Cox filed an

Application for Leave to Appeal that ruling in the Michigan Court of Appeals, but the Court of Appeals denied the Application by standard order on March 4, 2022. (*See* Mich. Ct. Appeals Order, ECF No. 20-5, PageID.1308. *See also People v. Cox*, No. 358951 (Mich. Ct. App. March 4, 2022).)

Cox then filed an Application for Leave to Appeal in the Michigan Supreme Court. That pleading contains the clearest and best summary of the claims that Cox raised in his Motion for Relief from Judgment. Those claims are as follows:

> I. The trial court erred in allowing an unsequestered witness to testify to material facts in the case violating Mr. Cox's due process rights.
>
> II. Mr. Cox was denied his 14th Amendment due process rights to a fair trial by the prosecution's repeated misconduct.
>
>> A. The prosecutor engaged in prosecutorial misconduct when he elicited material testimony from an unsequestered witness.
>>
>> B. The prosecutor engaged in prosecutorial misconduct when he elicited false testimony from the prosecution's key witness Nika Rogers.
>>
>> C. The prosecutor affected the defendant's substantial rights by clearly misstating key witness testimony during opening and closing arguments and direct examination.
>>
>> D. The prosecution violated the Brady rule by not disclosing exculpatory and impeaching evidence depriving defendant of his due process rights to a fair trial.

6

III. Defendant was denied the effective assistance of trial counsel contrary to the 6th Amendment of the United States Constitution by the numerous errors committed by counsel deprived defendant of a fair trial requiring the court to vacate defendant's convictions and a new trial be granted.

    A. Defense counsel was ineffective in failing to investigate and utilize available impeachment evidence.

    B. Counsel failed to interview witnesses or call any witnesses for an alibi defense or investigate the case for witnesses that could have provided exculpatory testimony.

    C. Trial counsel was ineffective for failing to object to testimony of an unsequestered witness.

    D. Trial counsel was ineffective in failing to object to prosecutor misconduct.

    E. Trial counsel was ineffective for stipulating to DNA evidence and failing to interview or call as witness a DNA expert.

IV. Defendant's trial was prejudiced due to the cumulative errors committed by trial counsel, prosecutor misconduct, and the trial judge, requiring that defendant's conviction be vacated and a new trial ordered.

V. Mr. Cox was denied the effective assistance of appellate counsel.

VI. The trial court erred in not granting an evidentiary hearing.

(Mich. Sup. Ct. Application, ECF No. 20-6, PageID.1447-1448; cleaned up.)

7

On October 31, 2022, the Michigan Supreme Court denied leave to appeal by form order. (*See* Mich. Sup. Ct. Order, ECF No. 20-6, PageID.1438. *See also People v. Cox*, 980 N.W.2d 690 (Mich. 2022).)

Cox then returned to this Court and filed a motion to re-open this case on January 4, 2023. (*See* Mot., ECF No. 17.)  The Court granted the motion. (*See* Order, ECF No. 18.)

On April 21, 2023, Cox filed an Amended Petition (which he signed and dated on March 22, 2023).  The Amended Petition raises only the claims that Cox raised in his post-appeal Motion for Relief from Judgment. (*See* Am. Petition, ECF No. 21, PageID.1523-1554.)  Nevertheless, the Court will proceed on the assumption that Cox wishes to proceed on those claims plus the claims in his initial Petition.[1]

Respondent filed a response to the claims in the Amended Petition on March 21, 2023.[2] (*See* Resp., ECF No. 19.)  In that response, Respondent contended, among other things, that the claims Cox raised in the Amended Petition were barred by the applicable statute of limitations. (*See id.*)

---

[1] To the extent that Cox's initial habeas petition also raises a double jeopardy claim, the Court notes that he obtained relief on that claim in state court. The claim is therefore moot. *See Tiggart v. Robinson*, 36 F. App'x. 750, 751 (6th Cir. 2002).

[2] Respondent filed his response to the claims in the Amended Petition before Cox formally filed that pleading because Respondent construed Cox's motion to re-open these proceedings as an amended petition.  Respondent previously filed a response to the claims in Cox's initial Petition on March 5, 2020. (*See* Resp., ECF No. 12.)

The Court wanted to give Cox a full opportunity to respond to Respondent's limitations arguments.  The Court therefore ordered Cox to file a reply brief that "explain[ed] why the Court should not dismiss the claims in the amended petition as barred by the statute of limitations." (Order, ECF No. 23, PageID.1560.)

Cox filed his reply brief on February 23, 2023.[3] (*See* Reply Br., ECF No. 24.) As explained in detail below, Cox's reply was largely unresponsive to Respondent's statute-of-limitations argument.  Most of Cox's reply was directed to the merits of the claims raised in the Amended Petition. (*See id.*, PageID.1563-1568.)  Cox's arguments on the timeliness issue were limited to roughly half of one page of text. (*See id.*, PageID.1562-1563.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[3] Cox has also filed a motion for an extension of time to file his reply brief. (*See* Mot., ECF No. 25.)  That motion is **GRANTED** and the Court will consider Cox's reply (ECF No. 24) as timely filed.

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

Cox's first claim asserts that the state trial court denied his right to present a defense when it prevented him from calling Tasha Pritchett as a defense witness at trial. More specifically, he says that Pritchett would have testified that she heard Rogers say her relationship with Cox was stormy, that Cox had hit her, and that he would go to jail. Cox says that this evidence would have shown that Rogers had a motivation to lie and testify falsely against him. This claim was raised on direct review and denied on the merits by the Michigan Court of Appeals:

A. EXCLUSION OF EVIDENCE

On appeal, defendant argues that the trial court erroneously excluded Pritchett's testimony because it would have been used to challenge Rogers' credibility, and that it was admissible under MRE 803(24).

Defendant's argument is somewhat confusing because defendant did not seek to admit Pritchett's testimony for substantive purposes. Indeed, it was unlikely that defendant wanted the jury to consider his treatment of his fiancée as relevant to his guilt or innocence. Since the purpose of the testimony was impeachment, the hearsay rule did not apply. MRE 607 allows a party to attack the credibility of any witness by evidence of bias or

inconsistent statements. Thus, the proper question was whether Pritchett's testimony would have revealed information showing bias that the jury would otherwise not learn of or if it revealed statements by Rogers inconsistent with Roger's testimony.

The offer of proof regarding Pritchett's testimony did not provide grounds to conclude that the trial court abused its discretion by excluding it. The summary of Pritchett's testimony, offered by counsel, was quite consistent with Roger's own testimony, which had already revealed the possibility of bias. Rogers testified that her relationship with defendant was "very stormy" and that defendant had hit her. She also testified that she was angry that defendant had taken her gun.

As already noted, statements offered for purposes of impeachment only do not need to satisfy the hearsay rule. However, since the court and parties discussed MRE 803(24) we will briefly address it. MRE 803(24) is the catch-all exception to the hearsay rule and allows for the admission of:

> A statement not specifically covered by any of the foregoing exceptions [i.e., MRE 803(1)–(23) ] but having the equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will be served by admission of the statements into evidence....

The record does not support application of MRE 803(24). "To be admissible under MRE 803(24), a hearsay statement must meet four requirements. *People v. Katt*, 468 Mich. 272, 290; 662 N.W.2d 12 (2003). First, it must

"demonstrate circumstantial guarantees of trustworthiness equivalent to the categorical exceptions." Id. In this case, the record is void of any meaningful gauge as to the reliability of Pritchett's hearsay testimony, as the only information provided about this witness is through the offer of proof discussed above.

Second, the statement must "be relevant to a material fact." *Id*. We hold that Pritchett's proposed testimony is relevant to Roger's bias. "A witness's bias is always relevant" and a "defendant is entitled to have the jury consider any fact that may have influenced the witness' testimony." *People v. McGhee*, 268 Mich. App. 600, 637; 709 N.W.2d 595 (2005).

Third, the statement must "be the more probative evidence of the fact reasonably available." *Katt*, 468 Mich. At 290. This requirement "is essentially ... a best evidence requirement, which is a high bar and will effectively limit use of the residual exception to exceptional circumstances." *People v. Douglas*, 496 Mich. 557, 577; 852 N.W.2d 587 (2014) (quotation marks and citation omitted). Here, the best evidence of Rogers's bias would be the testimony from Rogers, herself, which itself demonstrated the possibility of bias no less than the proffered testimony. "[N]onhearsay evidence on a material fact will nearly always have more probative value than hearsay statements, because nonhearsay derives from firsthand knowledge." *Katt*, 468 Mich. at 293. "Thus, [MRE 803(24) ] normally will not be available if there is nonhearsay evidence on point." *Id*.

Fourth, the statement must "serve the interests of justice by its admission." *Katt*, 468 Mich. at 290. Defendant failed to demonstrate or argue that the result of the trial would have been different had Pritchett testified, and there is nothing in the record that would support such a contention.

The exclusion of the evidence was well within the trial court's discretion and so there was no error.

## B. CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE

Defendant, relying on the same record, also asserts that the trial court's exclusion of Pritchett's testimony deprived him of his right to present a defense. We disagree.

The Michigan Supreme Court has stated that "[a]lthough the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v. Hayes*, 421 Mich. 271, 279; 364 N.W.2d 635 (1984) (citations omitted). Moreover, "[t]he Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present unless they are arbitrary or disproportionate to the purposes they are designed to serve." *People v. King*, 297 Mich. App. 465, 474; 824 N.W.2d 258 (2012) (quotation marks and citation omitted).

As stated above, Pritchett's testimony was not admissible because it was hearsay, and was not admissible under any of the hearsay exceptions. *See* MRE 801(c) and MRE 803. Defendant was still able to present the same evidence through cross-examination of Rogers, so he was able to present the defense that she was biased.

Additionally, defendant has failed to show prejudice as there was overwhelming evidence of his guilt. During a lawful search of defendant's home, the police seized a Batman toy consistent with the one in the victim's car, as well as Nike shoes, gray sweatshirts, stonewashed jeans, and blue gloves, which were items that were noticeable

13

from the surveillance video admitted into evidence. The Batman toy, which was still in a box, had defendant's fingerprints on it. The police also seized a .40 caliber handgun, which was the same type of handgun that was used to shoot the victim. Rogers testified that she owned a .40 caliber handgun, but had reported it missing. However, she stated that when she called defendant to ask if he had the handgun, defendant responded that he owned the gun. In addition, defendant's cellular telephone movements were consistent with the codefendant's telephone movements, which were near the alley where the victim's burnt vehicle was found. Given the overwhelming evidence of defendant's guilt, even if there had been error, reversal would not be warranted.

*Cox*, 2017 WL 6502776, at ** 2-3.

Cox has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law.

## 1

The right of an accused person to present a defense has long been recognized as "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). However, a defendant's right to present evidence is not unlimited, and it may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). When

deciding whether the exclusion of evidence impairs a defendant's right to present a defense, courts ask whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). *See also Chambers*, 410 U.S. at 302.

## 2

The Michigan Court of Appeals first determined that as a matter of state evidentiary law, the state trial court acted within the bounds of its discretion when it excluded Pritchett's testimony.  To the extent Cox challenges that conclusion, it is not cognizable in these proceedings because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008).

## 3

The Michigan Court of Appeals next held that the state trial court did not deprive Cox of a meaningful opportunity to present a complete defense.  Cox has failed to show that that conclusion was unreasonable.  As explained above, Cox's trial counsel asserted that Pritchett would testify that Rogers said her relationship with Cox was very volatile, that there was hitting, and that Cox could go to jail. (*See* 7/15/2016 Trial Tr. ECF No. 13-17, PageID.951.)  But Rogers had already testified

that her relationship with Cox was "very stormy," that Cox had hit her, that she was angry with Cox, and that she reported him to the police. (6/30/2016 Trial Tr. ECF No. 13-15, PageID.719, 724.)  Because Cox's trial counsel was able to elicit from Rogers herself essentially the same facts that Pritchett would have told the jury, it was not unreasonable for the Michigan Court of Appeals to conclude that Cox had a meaningful opportunity to present his defense that Rogers testified falsely against him because of the abusive relationship. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).  Cox's first claim is therefore without merit.

## B

The remainder of Cox's claims were first presented to the state courts in Cox's state post-conviction review proceedings. Respondent asserts that this Court's review of those claims is barred by the applicable statute of limitations.  The Court agrees.

## 1

AEDPA "imposes a one-year period of limitation for a state prisoner to file an application in federal court for a writ of habeas corpus." *Sexton v. Wainwright*, 968 F.3d 607, 609-610 (6th Cir. 2020).  The one-year limitation period ordinarily runs from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

16

>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

## 2

Respondent argues that the claims raised in Cox's Amended Petition are not timely under Section 2244(d)(1)(A) because they were filed more than one year after Cox's convictions became final. The Court agrees.

Cox's direct appeal ended when the Michigan Supreme Court denied his Application for Leave to Appeal on May 29, 2018. (*See* Mich., Sup. Ct. Order, ECF No. 13-20, PageID.1197.) Cox's convictions became final 90-days later, on August 27, 2018, when the deadline for seeking certiorari in the United States Supreme Court expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Therefore, Cox had until August 27, 2019, to timely file a federal habeas petition.

Cox filed his initial Petition in this Court by placing it in the prison mail system on August 23, 2019, four days before the statute of limitations expired. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (noting that habeas petition is considered filed when it is placed in the prison mail system).  The claims raised in the initial Petition were therefore timely.

But Cox did not identify or present to the Court in any way the claims in his Amended Petition until November 19, 2019 – approximately three months *after* the statute of limitations expired. (*See* Mot., ECF No. 8.)  As noted above, that was the day on which Cox filed his motion to stay these proceedings.  It was in that motion that Cox first identified the claims in his Amended Petition.  Because those claims were presented after the statute of limitations expired, they are timely only if they relate back to the claims that Cox timely filed in his initial Petition. *See Mayle v. Felix*, 545 U.S. 644, 650, 655 (2005).  They do not relate back.

In order to relate back, "the claims in the original and amended petitions must be 'tied to a common core of operative facts.'" *Pinchon v. Myers*, 615 F.3d 631, 642 (6th Cir. 2010) (quoting *Mayle*, 545 U.S. at 664).  In other words, "an amended habeas petition does not relate back where it asserts a new ground for relief supported by facts that differ from those in the original petition." *Id.*  Here, Cox's claims in the Amended Petition asserted "new ground[s] for relief" that were supported by different facts than those relevant to the claims in his initial Petition.

*Id.* More specifically, in his initial Petition, Cox sought relief from the state trial court's ruling that he could not present Pritchett's testimony under the theory that the trial court denied him his right to present a defense. In the Amended Petition, Cox raises new claims based on entirely different factual and legal predicates. He asserts that the prosecutor committed misconduct by withholding evidence and misstating facts related to when Rogers spoke to the police. He likewise claims that his trial counsel failed to impeach Rogers about when she informed the police that her gun had been stolen, for failing to object to testimony about the Batman toy stolen from Tolson's car, and for failing to raise an alibi defense. He also claims that his appellate counsel was ineffective for failing to raise these claims on direct review. Because the new claims raised in the Amended Petition do not arise from the same "common core of operative facts" as those raised in Cox's timely filed initial habeas Petition, the claims do not relate back are not timely under 28 U.S.C. § 2244(d)(1)(A).[4] *Id.*

---

[4] Cox does not argue that his claims are timely under any other sub-section of 28 U.S.C. § 2244(d)(1). Likewise, Cox does not argue that the claims in the Amended Petition are timely because the limitations period was tolled by the filing of his Motion for Relief from Judgment in state court. The Court notes that that motion could not have tolled the limitations period because that period had already expired by the time Cox filed the motion. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

**3**

Cox's counter-argument on the limitations issue, in its entirety, is as follows:

> Counsel for Respondent has invested eleven pages (14-24) of argument asserting an amendment to a habeas corpus petition <u>must</u> be filed within the one year period within which the original petition must be filed.[] This specious argument lacks only one thing: <u>legal support</u>. A careful review of each and every case cited under this argument reveals that not one case has ruled amendment to a habeas petition must be filed within the one year period within which to file the original petition. In fact. exhaustive research using the Lexis system has failed to produce a single case with such ruling.
>
> The habeas corpus statute and rules are silent as to an amendment being filed within the one year period to file an initial petition. Respondent's ANSWER fails to explain from where counsel obtained this radically new and unique theory.
>
> Local Rule 7.1(d)(2) mandates that a brief <u>must</u> cite "…the controlling or most appropriate authority for the relief sought." Here. Respondent's ANSWER Brief fails to cite any authority requiring amendment to a habeas petition be filed within the one year to file the initial action. Counsel has merely proposed that argument without any supporting authority. As such, Respondent's first argument must be denied for lack of authority to support the claims asserted.

(Cox Reply, ECF No. 24, PageID.1562-1563; emphasis in original.)

This argument is not responsive to and mischaracterizes Respondent's arguments. Respondent has never argued that a habeas petitioner is absolutely barred from filing an amended petition to add claims after the one-year statute of

limitations has expired.  Instead, Respondent argued that any new claims filed after the expiration of the limitations period are timely if and only if they "relate back" to the claims raised in an initial petition.  And Cox does not address this "relation back" argument in any way.  Nor does he attempt to show how the claims in the Amended Petition "relate back" to the claims in his initial Petition.  Nothing in Cox's reply brief persuades the Court that the claims in Cox's Amended Petition are timely.

### 4

Finally, while AEDPA's statute of limitations is also "subject to equitable tolling in appropriate cases," *Holland v. Florida*, 560 U.S. 631, 645 (2010), Cox has not shown an entitlement to such tolling here. A habeas petitioner is generally entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).  The burden is on a habeas petitioner to show that he or she is entitled to the equitable tolling of the one-year limitations period. *Id*.  Cox is not entitled to equitable tolling of the limitations period because he does not allege the existence of any extraordinary circumstance that stood in his

way and prevented him timely filing his new claims. *See Giles v. Wolfenbarger*, 239 F. App'x 145, 147 (6th Cir. 2007).

The one-year statute of limitations may also be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schup v. Delo*, 513 U.S. 298 (1995). *See also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" *Id.* "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329). For an actual innocence exception to be credible under *Schlup*, such a claim requires a habeas petitioner to support his or her allegations of constitutional error "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Cox's case falls outside of the actual-innocence tolling exception because he has presented no new, reliable evidence to establish that he is actually innocent of the crimes charged. *See Ross v. Berghuis*, 417 F. 3d 552, 556 (6th Cir. 2005).

**5**

For all of these reasons, the claims raised in Cox's Amended Petition are barred by the statute of limitations. As none of Cox's claims merit relief, Cox's Petition and Amended Petition will be denied.

**IV**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless the Court issues a Certificate of Appealability ("COA") under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Cox a COA because jurists of reason could not debate the Court's conclusion that Cox failed to demonstrate entitlement to habeas relief.

The Court also **DENIES** permission to proceed on appeal *in forma pauperis* because any appeal of this decision could not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a).

**V**

Accordingly, for all the reasons stated above, the Court:

(1) **GRANTS** Cox's motion for an extension of time to file his reply brief

(ECF No. 25);

(2) **DENIES WITH PREJUDICE** Cox's Petition and Amended Petition for

a writ of habeas corpus (ECF Nos. 1, 21);

(3) **DENIES** Cox a Certificate of Appealability; and

(4) **DENIES** Cox permission to appeal *in forma pauperis*.

**IT SO ORDERED.**

> s/Matthew F. Leitman
> MATTHEW F. LEITMAN
> UNITED STATES DISTRICT JUDGE

Dated:  March 15, 2024


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 15, 2024, by electronic means and/or ordinary mail.

> s/Holly A. Ryan
> Case Manager
> (313) 234-5126